In the

# United States Court of Appeals
### For the Seventh Circuit

No. 16-4076

R. ALEXANDER ACOSTA, Secretary of Labor,

*Plaintiff-Appellee,*

*v.*

DT & C GLOBAL MANAGEMENT, LLC, d/b/a TOWN & COUNTRY LIMOUSINE, and JOHN JANSEN, and WILLIAM LYNCH,

*Defendants-Appellants.*

No. 16-4077

MARK KRANTZ, *et al.*,

*Plaintiff-Appellees,*

*v.*

DT & C GLOBAL MANAGEMENT, LLC, and JOHN JANSEN,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-02010 – **Virginia M. Kendall**, *Judge.*
No. 1:14-cv-00998 — **Milton I. Shadur**, *Judge.*

ARGUED OCTOBER 3, 2017 — DECIDED OCTOBER 25, 2017

Before KANNE, ROVNER, and SYKES, *Circuit Judges*.

PER CURIAM. DT & C Global Management operated a ground transportation company in Chicago. The company and two of its owners were sued by former employees and the government for violating state and federal wage-payment laws. After the defendants ignored court orders, the district judges entered default judgments for the plaintiffs. Eleven months later, the defendants moved to vacate both judgments. *See* FED. R. CIV. P. 60(b). Deeming their excuses too little, too late, the judges denied the motions, precipitating this appeal. Because the defendants did not show good cause for the default, did not act quickly in filing motions to vacate, and failed to articulate any meritorious defenses, we conclude that the district judges did not abuse their discretion. We affirm the judgments.

## I. BACKGROUND

This appeal consolidates two lawsuits. In the first, drivers sued their former employer, DT & C Global Management, LLC, and John Jansen, an owner, for wage-payment violations. In the second, the Secretary of Labor sued the company, Jansen, and William Lynch, another owner, for the same violations.

### *The Employees' Case*

Mark Krantz and William Dunne, two former drivers for the company, alleged that the defendants failed to pay overtime rates, a violation of the Fair Labor Standards Act, 29 U.S.C. § 201, and the Illinois Minimum Wage Act, 820 ILCS 105/1. The plaintiffs also contended that defendants took unauthorized wage deductions in violation of Illinois's Wage Payment and Collection Act, 820 ILCS 115/9.

The case proceeded to discovery, but ended with a default judgment. When the defendants didn't respond to discovery requests, the plaintiffs filed a motion to compel, which the judge granted. About a year later, in late 2015, the plaintiffs moved for sanctions because the defendants had not complied with the discovery order. After the defendants' counsel responded that they couldn't reach the defendants, the judge allowed counsel to withdraw. Because the company could not represent itself without counsel, the judge ordered Jansen to appear for a hearing. When Jansen didn't show up, the judge entered sanctions: he struck the defendants' answer, awarded the plaintiffs their attorneys' fees, and entered a default. The plaintiffs then moved for a default judgment, which the judge granted in November 2015.

Eleven months later, the defendants moved to vacate that judgment under Federal Rule of Civil Procedure 60(b)(1). Jansen offered two excuses. He first asserted that he had received no notices during the last few months of the case. He said he didn't get notice of counsel's motion to withdraw or the judge's order directing him to appear because his company closed its business in September 2015 and no longer received mail at their office address. Jansen didn't get any mail sent to his home or e-mail addresses, he thinks, because he had moved to Indiana and his emails were "forwarded to another company." As a result, he was unaware of the default judgment against him until "summer 2016." Second he said he could not keep in contact with his lawyers because of his poor health. He explained that surgeries in 2011 and 2014, ongoing medication, and a hospitalization in April 2016 for "unspecified neurological issues" created "difficulty attending to business affairs." He acknowledged, however, that in the summer of 2015 he met with Attorney James E. Gorman several times

in Chicago. After hiring Gorman, Jansen had no further contact with Gorman's office until around "late March, early April" 2016, when Jansen learned that Gorman had died.

The judge denied the motion. He ruled that the default was the result of "inattention to the litigation" rather than illness, and the defendants had not shown that they had a legitimate defense.

*The Department of Labor Case*

The Secretary of Labor alleged the same Fair Labor Standards Act violations in its suit against DT & C, Jansen, and also William Lynch (minority owner and president of DT & C).

Discovery disputes arose here, too. The Secretary moved to compel defendants to respond to discovery requests. Defendants' counsel—the same as in the employees' case—moved to withdraw, again citing an inability to reach defendants. The following month the Secretary asked the court to enter a default for failure to defend. When defendants didn't respond, the judge entered the default and default judgment.

As with the employees' case, eleven months passed before the defendants moved to vacate the judgment. This motion was almost identical to the other one, but adds two points. First, Lynch swore that he relied on Jansen to keep him apprised of the case. Second, Lynch and Jansen admitted seeing a press release from the Department of Labor announcing the default judgment in January 2016. They both thought after reading it that they weren't individually liable, and they

weren't worried about the company's judgment because they had closed the business.[1]

The judge denied the motion to vacate. She explained that Jansen's surgeries, which occurred before the litigation started, did not excuse the default or Jansen's failure to learn about the default judgment. She also found that defendants had failed to show a meritorious defense.

## II. ANALYSIS

On appeal, the defendants argue that the district judges abused their discretion by denying the motions to vacate. They repeat that because Jansen did not receive notice of the judgments and suffered from bad health, their neglect of the cases is excusable. *See* FED. R. CIV. P. 60(b)(1). For a court to set aside a default judgment under Rule 60(b)(1), the movant must show good cause, quick action to respond to the default, and a meritorious defense to the underlying allegations. *See Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012). In most cases, a party is bound to the actions of its attorney even when those actions are errors or omissions. *See Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962), *Moje v. Fed. Hockey League, LLC*, 792 F.3d 756 (7th Cir. 2015). We review the denial of a Rule 60(b) motion for abuse of discretion. *See Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Con-Tech Carpentry, LLC*, 806 F3.d 935, 937 (7th Cir. 2015).

---

[1] The press release contains a hyperlink to the judgment, which named Jansen and Lynch as individual defendants. *See* U.S. Dep't of Labor, Federal judge orders Chicago limo company to pay more than $381K in back wages damages (2016), https://www.dol.gov/newsroom/releases/whd/whd20160121.)

The district judges reasonably concluded that the defendants didn't establish good cause for their default. The defendants first point to Jansen's health problems, but it was within the district judges' discretion to reject this excuse given the timeline and lack of corroborating information. Jansen's surgeries were in 2011 and 2014, yet he remained inattentive to the cases for all of 2015, well after these surgeries. Jansen replies that he remained on various medications, but he offers no medical opinion suggesting that they impaired his ability to handle his affairs. To the contrary, Jansen said that he was able to conduct business when he wanted. He met with Gorman in Chicago many times in the summer of 2015, during the same time that he was ignoring the courts' discovery orders.

The defendants respond with their second excuse: Jansen's move to Indiana in 2015, combined with problems of mail and email forwarding, also show good cause for losing contact with his lawyers and the court, and the resulting default. The district judges reasonably found this excuse deficient. When Jansen moved away and closed the business, he should have notified the court of his new address. *See Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005); *Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1988). This step was especially important because Jansen was considering hiring Gorman to replace his original attorneys with whom he apparently had a breakdown in communication. Gorman may have later let Jansen down by not doing anything to defend the suit, but Jansen had a duty, which he ignored, to check and see if his lawyer was doing something to represent him. *See Moje*, 792 F.3d at 759. If Jansen had simply looked at the docket or called his lawyer once after fall 2015, he would have learned that his

former lawyers had withdrawn, that Gorman didn't even enter and appearance in the case, and that Jansen needed to act promptly. *See id.* And even those simple steps would have been unnecessary if Jansen had merely notified the court of his new address in the summer of 2015.

The district judges also reasonably decided that the defendants did not respond quickly after learning about the default judgment. The defendants argue that they waited only "two, three months" between when Jansen learned of the default judgment in "summer 2016" and when they filed the Rule 60(b) motion in October. (Appellants' Br. App. at A-12, A-27.) They also point to Jansen's undocumented hospitalization for "unspecified neurological issues" in April 2016.

The defendants' account does not reflect quick action. First, they don't explain how Jansen's hospital stay in April disabled him from filing a motion to vacate until six months later, in October. Second, the defendants' "two, three months" delay after "summer 2016" was not quick. In *Jones v. Phipps*, this court decided that an appellant failed to show quick action when she moved to vacate five weeks after she knew about the judgment and was capable of getting help from a lawyer. 39 F.3d 158, 165 (7th Cir. 1994); *see also C.K.S. Eng'rs Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1208 (7th Cir. 1984) (stating movant's two-month delay before moving to vacate default judgment was not quick action). Finally, the two to three months that the defendants calculate ignores the January 2016 press release that both Jansen and Lynch read shortly after it was published. Despite reading this notice, they didn't take the easy and prudent step of checking the link

in the article to see if the judgment applied to them. Instead they let more than nine months pass before going to court.

Defendants also failed to proffer a meritorious defense to the complaint. The defense doesn't need to be a clearly victorious argument, but it must contain more than "bare legal conclusions." *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014). Yet that is all that the defendants offered. In their motion to vacate, the defendants said that Jansen has "defenses of good faith and that the amounts awarded are excessive and he has not received all credits he and other defendants should have with respect to the judgment amount." (R. 71 at 5.) The defendants don't elaborate on these defenses, nor do they provide any support for them. Although some courts will look to other pleadings to flesh out a possible defense, in this circuit district courts may reasonably demand that the defenses be included and developed in the motion to vacate. *See Jones v. Phipps*, 39 F.3d 158, 166 (7th Cir. 1994) (remarking that district court didn't abuse its discretion in concluding defense with "unsatisfactory" explanation was meritless). But the defendants did not provide anything else, thereby dooming their motion.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district courts' grants of Appellees' motions to dismiss.